CO-OPERATIVE PUBLISHING CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8606. Decided October 30, 1926.

1. Value of tangible assets as of March 1, 1913, determined for depreciation purposes.
2. Gain or loss on sale of capital assets determined.

*H. O. Hammonds, O. P. A.*, for the petitioner.
*Robert A. Littleton, Esq.*, for the respondent.

This is a proceeding for the redetermination of deficiencies in income taxes for the years 1920, 1921, 1922, and 1923, in the total sum of $1,333.55.

In the petition the following errors are alleged:

(1) Failure of the Commissioner to allow petitioner's claim of fair market value of property as of March 1, 1913, for purposes of depreciation and loss and gain on sale of assets.

(2) Failure of the Commissioner to allow petitioner depreciation rates on its property units for the years 1920 to 1923, inclusive, on the schedule promulgated by the Commissioner for the year 1919 and prior thereto.

(3) Failure of the Commissioner to allow as a deduction for the year 1920 the net loss sustained in 1919, said net loss having been previously determined by the Commissioner.

(4) Failure of the Commissioner to allow as a deduction from income for the years 1922 and 1923 the net loss of 1921, as claimed by petitioner.

(5) Erroneous determination by the Commissioner of net profit realized from the sale of capital assets in the year 1921.

### FINDINGS OF FACT.

The petitioner herein is an Oklahoma corporation with its principal place of business at Guthrie. It was organized by five individuals to take over from them certain property which they owned as partners. The property just mentioned consisted of a lot in the City of Guthrie, a three-story building situated thereon, and the machinery and equipment necessary for the operation of a printing plant.

All of the property above referred to originally belonged to the State Capital Co. This organization went into bankruptcy and the holders of the first mortgage on the property instituted foreclosure proceedings and at the foreclosure sale purchased the property for $8,000. The five partners were employees of the State Capital Co. and as such were thoroughly conversant with the property and business of the company. When it became bankrupt they leased the property from the receiver and carried on the business until the foreclosure sale. After the foreclosure sale the partners offered the purchasers $15,000 for the property, to be paid by a $3,000 cash payment and notes for the balance. This offer was accepted and on January 4, 1913, the purchase and sale was completed. Shortly thereafter the petitioner was organized and the property thus acquired was transferred to it in exchange for shares of stock having a total par value of $15,000.

The State Capital Co. owned several linotype machines. These were damaged by fire in 1902. Thereafter they were in part repaired and one placed in a usable condition. Two of them were sold in 1921.

In the year 1910, the capital of the State of Oklahoma was moved from Guthrie to Oklahoma City. This change materially affected business conditions and property values in Guthrie and had a considerable effect upon the business of the petitioner's predecessor.

The petitioner, immediately after its incorporation, opened a set of books and, among other entries, were the following:

| | |
|---|---:|
| Building and site | $12,000 |
| Machinery and type | 7,000 |
| Furniture and fixtures | 2,000 |
| Total | 21,000 |

The Commissioner, after making such additions to the plant and equipment account as he deemed warranted by reason of subsequent expenditures, placed upon the property the following valuations:

| | Year. | | | |
|---|---|---|---|---|
| | 1920. | 1921. | 1922. | 1923. |
| Building | $12,760.85 | $12,760.85 | $12,760.85 | $12,760.85 |
| Machinery and equipment | 9,047.40 | 10,997.33 | 16,310.96 | 16,584.44 |
| Furniture and fixtures | 2,112.06 | 2,112.06 | 2,147.06 | 2,147.06 |
| Automobiles | | 1,723.44 | 1,723.42 | 1,727.44 |
| Electric sign | | | 517.50 | |

For the various years the Commissioner allowed depreciation on the various classes of property as follows: building, 3 per cent; machinery and equipment, 10 per cent; furniture and fixtures, 10 per cent; automobiles, 33⅓ per cent; electric sign, 5 per cent.

## OPINION.

GREEN: The first allegation of error relates to the March 1, 1913, valuation of the depreciable property as determined by the Commissioner for the purpose of computing depreciation thereon and the gain or loss on the linotype machines resulting from their sale.

In addition to the facts found above, the evidence shows the cost to the State Capital Co. of the assets or property the value of which on March 1, 1913, is in controversy. A substantial portion of the property was purchased by that company in 1902 and there is no proof of purchases immediately prior to the bankruptcy proceeding. The transactions from which these costs are derived are too remote to serve as a measure of the March 1, 1913, value.

The evidence also shows that prior to their purchase, the five partners made an inventory and appraisal of the property and that the value thus determined by them is substantially in excess of the price paid at the foreclosure sale or by the five partners. We do not

know what sort of value the five were endeavoring to ascertain, but it is clear that it was not market value, and we therefore conclude that the appraisal is no evidence of the March 1, 1913, value.

It seems to us that the two sales are the best evidence of value; and we therefore find the value of the property at the date of its acquisition by the petitioner to have been $15,000. There is no evidence of appreciation between that date and March 1, 1913.

The second allegation of error is based upon the theory that the Commissioner having once fixed the rates of depreciation applicable to specific units of depreciable property, must thereafter allow a deduction for depreciation at the rate thus fixed. We know of no precedent which holds that the Commissioner's determinations are, as to him, *res adjudicata*, and this Board has repeatedly held to the contrary.

The third allegation of error relates to a net loss which the petitioner alleges it sustained in 1919, and which it seeks to deduct from its net income for the year 1920. The tax for the year 1919 is not considered in the deficiency letter. It appears that in its return for 1919 the petitioner showed a net income of $405.25, and that the Commissioner determined the net income for that year to be $1,550 and that he proposed an additional assessment for that year. It does not appear whether an assessment of the additional tax was made or a claim for refund filed. The proof by which the petitioner seeks to establish the net loss is wholly inadequate. Because of this inadequacy, we are not called upon to determine whether, under the statute, as a matter of right, it is entitled to have determined by this Board a net loss for a year not involved in the deficiency letter where such net loss is still a matter of controversy between the Commissioner and the petitioner.

There is no evidence upon the issue presented by the fourth allegation of error. Apparently it is based upon the theory that a net loss for 1921 would be established as the result of increasing the basis and rates for depreciation. Our conclusion as to the proper basis has already been stated and there is no evidence warranting a change in the rates fixed by the Commissioner.

The evidence offered in support of the fifth allegation of error leaves us in doubt as to how many linotype machines the petitioner had, their cost to petitioner, their value on March 1, 1913, and as to which machines were sold. It also appears that some of the machines were in part dismantled to secure parts for others. We are therefore unable to ascertain whether the Commissioner's computation of gain is correct or erroneous.

*Judgment will be entered for the Commissioner.*